1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                         WESTERN DIVISION


3
       UNITED STATES OF AMERICA,        Case No. 3:15CR67
4                                        Toledo, Ohio
                  Plaintiff,             Monday, June 29, 2015
5
            vs.
6
       BARTOLO DOMINGUEZ,
7
                  Defendant.
8

9                     TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE JAMES R. KNEPP, II
10             UNITED STATES DISTRICT MAGISTRATE JUDGE

11                    **CHANGE OF PLEA HEARING**

12

       APPEARANCES:
13
       For the Government:        Dana Mulhauser,
14                                Assistant United States Attorney

15     For the Defendant:         Jeremy W. Levy, Esq.

16
       Interpreter:              Cindy Lepeley
17

18

19

20
       Court Reporter:           Bruce A. Matthews, RDR-CRR
21                               Chief Court Reporter
                                 United States District Courthouse
22                               801 West Superior Avenue
                                 Cleveland, Ohio    44113
23                               (216) 357-7207

24     Proceedings recorded by mechanical stenography, taken from a
       digital audio recording, transcript produced by
25     computer-aided transcription.

```
 1          (The defendant's responses were given through the
 2     interpreter.)
 3                    THE COURT:  Good afternoon.  Please be seated.
 4          The matter before the Court this afternoon is United
 5     States of America versus Bartolo Dominguez.  It is case
 6     number 3:15CR67.
 7          Mr. Dominguez is charged in an indictment filed back
 8     in February of this year with, I believe, a charge of
 9     violation of Title 8, United States Code, Section
10     1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(II) and
11     1324(a)(1)(B)(i), harboring and trafficking aliens for
12     financial gain.
13          It's my understanding that the matter comes on this
14     afternoon for a change of plea.  Present in the courtroom
15     are the defendant, Mr. Dominguez, his counsel, Mr. Levy.  We
16     are joined also by interpreter, AO certified interpreter,
17     Ms. Cindy Lepeley, and here on behalf of the government is
18     Ms. Rice, is that right?
19                    MS. MULHAUSER:  Miss Mulhauser, Your Honor.
20                    THE COURT:  Mulhauser.  I got the wrong one.
21     I'm sorry.
22                    MS. MULHAUSER:  That's all right.  You're not
23     the first.
24                    THE COURT:  I had to pick one or the other of
25     you, so I apologize again.
```

1           Are the parties ready to proceed?

2                     MS. MULHAUSER:  We are, Your Honor.

3                     MR. LEVY:  Yes, Your Honor.

4                     THE COURT:  Ms. Mulhauser, we're doing an ECRO

5     recording here, and it actually works better if you just

6     stay seated.

7                     MS. MULHAUSER:  I can do that.

8                     THE COURT:  So you can stand up all you want

9     down on the second floor, but we'll just kind of stay seated

10    here and the tape sounds better, so...

11         Before I go any further, I can represent to you all

12    that Ms. Lepeley is a AO certified court interpreter.  I'd

13    be happy to make any inquiry of her qualifications if either

14    of you would like me to do so.

15                    MS. MULHAUSER:  The government satisfied, Your

16    Honor.

17                    MR. LEVY:  No need, Your Honor.

18                    THE COURT:  Okay.  Would you please swear the

19    interpreter?

20         (The interpreter was sworn in.)

21                    THE COURT:  So, Mr. Dominguez, good afternoon

22    again.  My name is Judge Knepp, and I'm going to conduct

23    this proceeding today, I believe, but we have to go through

24    several steps, the first of which is your agreeing to me

25    conducting the proceeding.  We'll talk about that.

1          We also have to make sure that you are competent to

2     enter your plea.  We have to make sure you understand your

3     trial rights which are being waived if your plea is

4     accepted.

5          We have to make sure you understand fully the nature

6     of the charges against you, and part of understanding the

7     charges means understanding the maximum possible punishment.

8          And, finally, we have to make sure that your plea is

9     being entered voluntarily, that is, that you're not being

10    subjected to any threat by anyone or haven't been promised

11    anything that you shouldn't be promised.

12         Once we do all of that, assuming we're both satisfied,

13    at some point I'll ask you what your plea is and you can

14    tell me, but we have to go through several steps before we

15    get to that.

16         And before we even start going through those steps, I

17    want to make sure you understand something.  Nothing that

18    we're doing here today in any way diminishes or waives your

19    right to counsel.  Your right to counsel stays with you as

20    long as this case stays with you.  So even though I'm going

21    to ask you multiple times today if you're willing to waive

22    certain rights, I'm never talking about your right to

23    counsel.  You have the right to have the lawyer with you in

24    this matter as long as this matter is with you.

25         Do you understand that?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Okay.  Similarly, I've arranged

3    for Ms. Lepeley to be here to assist us with interpreting.

4    I'll do my best to speak at a pace that allows her to keep

5    up.  She's very good, but if at some point it becomes

6    confusing to you listening to me and to her and you'd like

7    us to either slow down or go over something again, all you

8    need to do is say so, and I'll stop and we'll go back over

9    it, because I really want your answer at the end of this

10   proceeding when I ask you, "Did you understand everything

11   that just happened here," to be yes.  Okay?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  The first thing we have to talk

14   about is your agreeing to appear before me here today as

15   opposed to a District Judge.  You may find the District

16   Judges to be both smarter and better looking than me, but I

17   can do much of the same stuff that they can do.  Some of the

18   really important stuff, however, comes only after the

19   parties consent, and this is going to be one of those

20   things.

21        The only way I'll conduct this proceeding today is if

22   you consent.  Otherwise, if you don't consent, Judge Carr

23   will do this proceeding himself, or one of the other Article

24   III Judges.

25        Do you understand that you have the right to have

1    these proceedings conducted by a United States District

2    Judge, that is, by a judge who is appointed by the

3    President, confirmed by the Senate, and serves a life tenure

4    on the bench?

5         Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you understand that I am not a

8    District Judge?  Rather, I'm a United States Magistrate

9    Judge.  I'm created by Congress, and I have to be

10   reappointed every eight years.

11        Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Have you discussed with your

14   attorney my conducting this proceeding this afternoon, and

15   have you concluded it is in your best interest to proceed

16   before me here today even though I am not a United States

17   District Judge?

18             THE DEFENDANT:  Yes.

19             THE COURT:  As you know, this case is assigned

20   to Senior District Judge James Carr.  Are you knowingly and

21   voluntarily giving up your right to plead before Judge Carr

22   or some other Article III Judge, and do you consent to

23   proceeding before me here today?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And I have before me a written

1    consent to proceeding before Magistrate Judge.  Did you have

2    this form interpreted for you such that you understood it

3    when you signed it?

4                    THE DEFENDANT:  Yes, Your Honor.

5                    THE COURT:  Did anyone make any threats or

6    promises to cause you to agree to appear before me here

7    today?

8                    THE DEFENDANT:  No, Your Honor.

9                    THE COURT:  Okay.  I will find that you have

10   knowingly and voluntarily consented to proceed before me

11   here today, and I'm going to cause the written consent to be

12   filed of record in the case.

13       Mr. Dominguez, it's my intention here momentarily to

14   place you under oath.  The reason I do that is when

15   individuals speak in court, it has evidentiary significance.

16   When the lawyers talk, they speak as officers of the Court,

17   but when you speak, you do so as a witness or a party, and

18   in either event, that's done with sworn statements.

19       I caution you before I place you under oath that if

20   you were to say something that's not true once you're placed

21   under oath, you could be subject to prosecution for perjury.

22       Do you understand that?

23                    THE DEFENDANT:  Yes, Your Honor.

24                    THE COURT:  Would you please stand and raise

25   your right hand?

```
 1              (The Defendant was sworn in.)

 2                   THE COURT:  Please be seated.

 3          Would you please tell me your full name for the

 4     record.

 5                   THE DEFENDANT:  Bartolo Dominguez Nava.

 6                   THE COURT:  And Mr. Dominguez, how old are

 7     you, sir?

 8                   THE DEFENDANT:  54 years old.

 9                   THE COURT:  Have you ever gone by any other

10     names?

11                   THE DEFENDANT:  No, sir.

12                   THE COURT:  Are you married, sir?

13                   THE DEFENDANT:  I live with someone, yes.

14                   THE COURT:  Okay.  Do you have any dependent

15     children?

16                   THE DEFENDANT:  Not here.

17                   THE COURT:  How far did you go in school?

18                   THE DEFENDANT:  Third grade.

19                   THE COURT:  I take it your ability to read and

20     write in English is limited?

21                   THE DEFENDANT:  Yes.

22                   THE COURT:  Are you able to understand me as

23     interpreted by Ms. Lepeley, though?

24                   THE DEFENDANT:  Yes, perfectly.

25                   THE COURT:  And remember, if at any point
```

1    that's not the case, just say something, and we'll do our

2    best to fix it.  Okay?

3                    THE DEFENDANT:  Fine.

4                    THE COURT:  What kind of work have you done in

5    the last couple years?

6                    THE DEFENDANT:  Just working on farms.

7                    THE COURT:  How is your physical health?

8                    THE DEFENDANT:  Perfect.

9                    THE COURT:  All right.  Are you under the

10   influence of any medicine, any drugs, any alcohol, anything

11   that would affect or impair your ability to understand

12   what's going on here today?

13                   THE DEFENDANT:  No.

14                   THE COURT:  Have you taken any drugs, any

15   alcohol, or any medicine in the last day or so?

16                   THE DEFENDANT:  No.

17                   THE COURT:  Is your mind clear?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  Do you understand why you're here?

20                   THE DEFENDANT:  Yes.

21                   THE COURT:  Have you ever been under the care

22   of a doctor or a clinic or a counselor or a hospital or any

23   person or thing like that for a mental health condition?

24                   THE DEFENDANT:  No.

25                   THE COURT:  Mr. Levy, have you had any

```
1    difficulty communicating with Mr. Dominguez either directly

2    or through an interpreter?

3                   MR. LEVY:  No.

4                   THE COURT:  Have you discussed the case with

5    him?

6                   MR. LEVY:  Yes.

7                   THE COURT:  Do you believe he understands the

8    nature and purpose of the hearing today?

9                   MR. LEVY:  Yes, I do.

10                  THE COURT:  Do either you or Ms. Mulhauser

11   have any reservation as to Mr. Dominguez' competence here

12   today?

13                  MR. LEVY:  No.

14                  MS. MULHAUSER:  No, Your Honor.

15                  THE COURT:  Well, neither do I.  I've had the

16   opportunity to interact with Mr. Dominguez.  I've listened

17   to his answers to my questions.  I've observed his affect

18   and demeanor here in the courtroom, all of which has been

19   entirely appropriate and, frankly, pleasant.

20        In light of all of that, with the concurrence of

21   counsel that they don't see any problem, I will find that

22   Mr. Dominguez is competent, and we will proceed.

23        Mr. Dominguez, have you had enough time to speak with

24   Mr. Levy during the time that this case has been pending?

25                  THE DEFENDANT:  Yes, Your Honor.
```

1            THE COURT:  Have you told him everything you

2    know about the case?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Are you satisfied with the advice,

5    the competence, the work, the legal representation that

6    Mr. Levy has provided in this case?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Have you discussed all the

9    possible defenses to the case or how you might defend the

10   case if you were going to take it to trial or whether it

11   would be a better move to enter into some kind of a plea?

12       Have you had those discussions with Mr. Levy?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Now, remember, you can stop at any

15   point today if you need to talk with him about something.

16   I've got as much time as you need.

17       Mr. Levy, have you had enough time to consult with and

18   prepare Mr. Dominguez at each stage of this proceeding?

19           MR. LEVY:  Yes.

20           THE COURT:  Ms. Mulhauser, I wonder if you

21   would summarize for us the charge to which Mr. Dominguez is

22   contemplating a plea here today and tell us what the maximum

23   statutory penalties that would be associated with a

24   conviction of that charge would be.

25           MS. MULHAUSER:  I would, Your Honor.

1        Mr. Dominguez is charged under 8, U.S.C., 1324.  The

2   maximum length of imprisonment is ten years.  The maximum

3   statutory fine is $250,000.  The maximum period of

4   supervised release is three years, and there is a

5   hundred-dollar special assessment.

6                    THE COURT:  Mr. Dominguez, is that consistent

7   with your understanding of the charge?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  And just to be clear, I think

10  there's also a forfeiture specification here.  Is he

11  pleading to that as well, Ms. Mulhauser?

12                   MS. MULHAUSER:  He is, Your Honor.  Pursuant

13  to 8, U.S.C., 1324(b) and 28, U.S.C., 2461, the defendant is

14  consenting to the forfeiture of a 2010 Econoline van.

15                   THE COURT:  Okay.  Thank you.

16      So, Mr. Dominguez, I have to go through with some

17  degree of specificity your trial rights so that we can

18  conclude that you have understood those rights and knowingly

19  waive those rights, so I'm going to do that now.

20      Under the Constitution of the United States, you have

21  the right to have a trial.  That trial could either be to a

22  judge or more probably to a jury.

23      At that trial, you'd have the right to confront and

24  cross-examine any witness that the government might bring in

25  to testify against you.

1          You'd also have the ability to use the authority of

2     the Court to compel the attendance of any witness that you

3     wished to have come into court and testify on your behalf.

4          Do you understand that?

5                    THE DEFENDANT:  Yes, Your Honor.

6                    THE COURT:  If the case went to trial, the

7     government would have to prove your guilt beyond a

8     reasonable doubt, and that's a really high standard of

9     proof.  It's the highest standard that we have in the court

10    system.

11         You would not have to prove your innocence.  You come

12    into the trial with something called a presumption of

13    innocence, meaning that you are presumed innocent, and the

14    government can only overcome that presumption by proving

15    your guilt with evidence that the jury finds to be

16    sufficient to say that you are guilty beyond a reasonable

17    doubt.

18         Do you understand that?

19                   THE DEFENDANT:  Yes, Your Honor.

20                   THE COURT:  If the case went to trial, you

21    could testify if you wanted to, or you could choose not to

22    testify.  If you chose not to testify, that couldn't be held

23    against you.  The prosecution couldn't make a comment about

24    that.  The jury couldn't hold it against you.  Indeed, they

25    would be instructed that they shouldn't expect to hear a

1      defendant testify; that we all have a right to not testify

2      if we're on trial; and it would be a violation of their oath

3      as a juror to hold it against you if you chose not to

4      testify.

5            Do you understand all of that?

6                    THE DEFENDANT:  Yes, Your Honor.

7                    THE COURT:  Do you understand you have the

8      right to maintain your plea of not guilty here?

9                    THE DEFENDANT:  I didn't know, no.

10                   THE COURT:  Okay.  Well, let me tell you, you

11     have the right to maintain your plea of not guilty, and if

12     you maintain your plea of not guilty, you'll have the right

13     to have a speedy trial, and you'll have the right to have a

14     lawyer represent you at that trial, and if you can't afford

15     to hire a lawyer for the trial, the Court will appoint a

16     lawyer for you.

17           Do you understand all of that?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  Do you understand, sir, that you

20     do not have to plead guilty even if you are guilty?  You can

21     take the case to trial.  You don't have to plead guilty.

22           Do you understand that?

23                   THE DEFENDANT:  Yes, but I think it was a

24     small mistake.

25                   THE COURT:  Okay.  Well, that's something you

1    got to decide.  What I have to tell you is:  You don't have

2    to plead guilty, and if you don't think you're guilty, you

3    shouldn't plead guilty.

4              THE DEFENDANT:  It's the first time that I'm

5    in this situation.  It's been a long time, and I want to get

6    this over with.

7              THE COURT:  Okay.  Well, I'm not sure that's a

8    good reason to -- to plead guilty, because this is an

9    important thing that we're talking about.  And what I'm

10   suggesting to you is, if you don't believe you're guilty, I

11   wouldn't want you to plead guilty, because I'm going to make

12   you admit -- if you're going to plead guilty, that's only

13   going to be after the government tells me what they would

14   have proven and you agree with it.

15      So if you're not prepared to do that, you don't want

16   to enter a guilty plea.

17             MR. LEVY:  May I have a minute to talk to him?

18             THE COURT:  Yeah, sure.

19      (Pause.)

20             THE COURT:  Let's begin that line of inquiry

21   again.

22      Do you, Mr. Dominguez, understand that you have a

23   right to maintain your plea of not guilty here?

24             THE DEFENDANT:  Yes.  Yes, but I'm going to

25   accept the responsibility.

1          THE COURT:  Okay.  That's fine.  But I have to

2    tell you also, you don't have to plead guilty even if you

3    are guilty.  That's your decision, but nobody -- I'm not

4    telling you you have to plead guilty.

5          Do you understand that?

6               THE DEFENDANT:  Yes.

7               THE COURT:  If you decided to take the case to

8    trial, like we talked about a second ago, and if that trial

9    was before a jury, we would bring in a large number of

10   jurors from around this division of the district, and we'd

11   ask them questions.

12         The purpose of those questions would be to determine

13   if a particular individual could be a fair and impartial

14   juror, and by that I mean could they judge the evidence

15   based on what they see and hear here in the courtroom and

16   follow the instructions of law that the judge gives them.

17         Once we had a panel of individuals that the judge was

18   convinced could be fair and impartial, there would still be

19   an opportunity for you and the government to excuse a fair

20   number of those jurors, and you wouldn't have to give any

21   reason at all, and those are called peremptory challenges.

22         Once that process was completed, we'd have a panel of

23   12 individuals.  That would be the jury.  The jury would be

24   made up of 12 citizens.  Those 12 people would have to agree

25   unanimously before they could return a verdict.

1          Do you understand all of that?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Do you understand everything I've

4     told you so far?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  If you went to trial and if you

7     were found guilty, you'd have a right to appeal your

8     conviction under certain circumstances at least.  You'd also

9     have the ability to appeal your sentence under certain

10    circumstances.  I call that to your attention, because a

11    little while ago, I read what I believed to be a plea

12    agreement that I think you may be contemplating entering

13    into, and I can tell you that in that plea agreement, I see

14    a waiver of appeal, and it's a very broad waiver of appeal.

15    Indeed, it's a waiver of appeal that is as broad as it can

16    possibly be.

17         There are certain -- there are certain bases for an

18    appeal that you cannot waive as a matter of law.  Those go

19    to things like prosecutorial misconduct, ineffective

20    assistance of your own counsel, if the judge were to

21    sentence you in excess of the statutory maximum, or if the

22    judge were to sentence you in excess of the maximum

23    guideline.  But beyond that, you are waiving your right to

24    appeal.

25         You need to understand that our Court of Appeals tends

1      to enforce waivers like that, so you wouldn't want to enter

2      into that agreement unless you were, in fact, willing to

3      waive your right to appeal.

4           Do you understand that?

5                     THE DEFENDANT:  Yes.

6                     THE COURT:  So if you enter into a guilty plea

7      as you're contemplating here today, you're waiving all of

8      these rights that we've just talked about.  If your plea is

9      accepted, there's not going to be a trial.  Rather, what's

10     going to happen is, I'm going to enter a recommendation on

11     the docket.

12          Judge Carr is going to review what I did here today.

13     Assuming he concurs with my findings, he will enter a

14     judgment of guilty, and ultimately he will sentence you on

15     the basis of that judgment and on the basis of a presentence

16     investigative report which will be prepared between now and

17     the time of your sentence.

18          Do you understand that?

19                    THE DEFENDANT:  Yes.

20                    THE COURT:  So I don't know to what extent you

21     are presently possessed of any of these rights, but I have

22     to tell you as an individual who stands convicted of a

23     felony in Federal Court, you can expect that you will be

24     giving up the right to vote, the right to hold public

25     office, the right to serve on a jury, and the right to

1    possess any kind of firearm in this country.

2         Do you understand all of that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Let's turn now to the plea

5    agreement, Mr. Dominguez, and I want to call a couple things

6    to your attention.

7         First of all, can you tell me, have you had an

8    opportunity to review this document and have it read to you

9    by the interpreter and discuss it with Mr. Levy?

10             THE DEFENDANT:  Yes.

11             THE COURT:  As you see, there's a spot down at

12   the bottom right corner of every page where it says

13   "Defendant's initials."  Do you see that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Don't put your initials there, or

16   if you've already -- if you've already done that, don't send

17   that up here to me unless you're prepared for that to mean

18   to me, when I see your initials there:  Judge, I understand

19   every word on this page and I agree with it.

20        So don't send me this document with your initials on

21   it unless you're willing to make that statement to me:  I

22   understand every word on this page and I agree with it.

23        Okay?

24             THE DEFENDANT:  Okay.

25             THE COURT:  Now, what I'm going to do is, I'm

1    going to ask Ms. Mulhauser to summarize this plea agreement

2    for us on the record here.  What she says should be

3    completely consistent with your understanding of what this

4    document says.  Of course, what the document actually says

5    is what controls, but what she says should be consistent

6    with what the document says, which should also be consistent

7    with what you understand it to say.

8         However, if you hear something from Ms. Mulhauser that

9    isn't consistent with your understanding, we need to figure

10   out what's wrong.  Either she's wrong, you're wrong, or

11   there's something wrong in the document.  But my expectation

12   is that those three things will all be in agreement, that

13   is, what the document says, what Ms. Mulhauser says, and

14   what you understand.

15        So listen carefully and let's make sure that's the

16   case.

17        Ms. Mulhauser, I'd ask you to summarize the key

18   elements of the plea agreement on the record here.  You can

19   skip over the factual basis.  I'll come back to that as sort

20   of the last thing that we do.  Okay?

21             MS. MULHAUSER:  All right.  Your Honor, in

22   the -- the nature of this plea agreement, the defendant

23   agrees to plead guilty to the single count in the

24   indictment.  In return, the government agrees not bring any

25   other charges that are related to these offenses or that the

1    government is aware of.

2         Your Honor, the two sides have agreed on the basis of

3    the sentencing guidelines, which is in paragraph 17 of the

4    agreement, which puts the defendant at a category 15.  The

5    parties also agree that they will recommend to the Court

6    that they follow those advisory guidelines.

7         The defendant also waives his right to an appeal to

8    the extent that those rights are appealable.

9         And the agreement does include a forfeiture provision

10   in which the defendant agrees to forfeit an Econoline van as

11   the proceedings of this enterprise.

12              THE COURT:  Thank you.  Is that consistent

13   with your understanding, Mr. Dominguez?

14              THE DEFENDANT:  Yes.

15              THE COURT:  I'm going to go through and hit

16   just a couple of things here to pick up with you.  You've

17   heard earlier talk about what the maximum penalty that could

18   be imposed here is.  I need to make sure that you understand

19   that following any prison term, you could be subjected to a

20   period of supervised release, and if you were subjected to

21   supervised release and if you were to violate those terms,

22   you could be exposed to a maximum period of incarceration in

23   excess of the statutory maximum, because you would also not

24   expect to get credit for time served at the time a violation

25   of supervised release occurred.

1          You also need to understand that restitution could be

2     ordered as a condition of your sentence in this case.  That

3     could include requiring you to pay some or all of the costs

4     of your confinement or supervised release.

5          You've also heard that you will be required to forfeit

6     property to the government.

7          Ms. Mulhauser mentioned briefly that you and the

8     government have agreed to a guideline calculation except you

9     do not have an agreement as to your Criminal History

10    Category, so we really don't know what your final guideline

11    calculation is going to be until such time as that final

12    criminal history is prepared and the presentence

13    investigative report is prepared.

14         And even when we do know what your final guideline

15    calculation is, that's not binding on the judge who

16    sentences you.

17         Do you understand that?

18                   THE DEFENDANT:  Yes.

19                   MS. MULHAUSER:  Your Honor, may I also point

20    out --

21                   THE COURT:  Yes.

22                   MS. MULHAUSER:  -- I forgot one of the

23    government's own obligations under this plea agreement,

24    which is that we agree that Mr. Dominguez merits a two-point

25    acceptance of responsibility reduction.

1              THE COURT:  Okay.  Well, that's good.

2         The guidelines that are calculated are advisory in

3    nature.  They are one thing that the judge must consider,

4    but the judge has to consider some other things that are set

5    forth in Section 3553(a).  There are several factors that

6    the Court has to look at, all of which are designed to come

7    up with a sentence that is sufficient to accomplish the

8    needs of that statute without being excessive.  So that's

9    the nomenclature that we use, sufficient, but not excessive

10   in terms of a sentence.

11        But most notably, the guidelines are one factor, but

12   not the only factor.  What I need to call your attention

13   specifically is, as we sit here today, neither you nor I,

14   nor the lawyers know what Judge Carr, or whatever judge

15   ultimately sentences you, is going to do.  We may have some

16   idea based on expectations or past practice, but it's just

17   that.  It's an expectation.  It's not binding on the judge.

18        What you need to understand is if the judge happens to

19   sentence you more severely than you presently expect, that

20   is not a basis to undo your guilty plea here today.  It

21   might or might not be a basis for an appeal, but under no

22   set of circumstances that I can think of would it be a basis

23   for you to come back and withdraw your guilty plea.

24        Do you understand that?

25              THE DEFENDANT:  Yes.

1         THE COURT:  So we're not going to be in a

2    position to know what your final guideline calculation,

3    which as I said is one of the important pieces of advisory

4    information, we're not going to know what that is until

5    after the presentence investigative report is prepared.  And

6    typically the lawyers get a chance to look that in draft

7    form and talk to the probation officer to maybe fix any

8    mistakes that are in that report, and then if there are

9    still things that they disagree with, they can file

10   objections, and the trial court will rule on those

11   objections before your sentencing here.

12        Do you understand all that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Ms. Mulhauser, could you go back

15   and pick up for us the factual basis for the plea?

16        What I'm doing now, Mr. Dominguez, I don't let someone

17   plead guilty unless they tell me they did what the

18   government says they did.

19        When we have a plea agreement, typically that's easy,

20   because what we call the relevant conduct is reduced to

21   writing in the plea agreement, so my expectation is that the

22   AUSA will read that summary of the factual basis and

23   relevant conduct contained in paragraph 22 into the record,

24   and she'll say that if the case went to trial, this is what

25   the government could prove.  And when she gets done, I'm

1    going to ask you if she's right.

2         Ms. Mulhauser?

3              MS. MULHAUSER:  Thank you, Your Honor.

4         Your Honor, if this case were to have gone to trial,

5    the government would prove beyond a reasonable doubt the

6    following:  From in or around January 2013, and continuing

7    to on or around December 17th, 2014, in the area of Marion,

8    Ohio, which is located in the Northern District of Ohio,

9    Western Division, defendant knowingly or in reckless

10   disregard of the fact that an alien had come to, entered, or

11   remained in the United States in violation of law,

12   transported an alien within the United States, by means of

13   vehicular transportation in furtherance of such violation of

14   law and for the purpose of commercial advantage and private

15   financial gain.

16        Defendant owned and operated Rabbit Cleaning,

17   Incorporated, a limited liability company incorporated in

18   the state of Ohio.  Rabbit Cleaning contracted with various

19   companies, including Haba Corporation and Papagos,

20   Incorporated to provide manual labor at egg farms in the

21   Marion, Ohio area.

22        Defendant hired a number of illegal aliens, all or

23   most of whom were Guatemalan citizens, as employees to

24   perform manual labor at the egg farms.

25        As part of the business arrangements, defendant drove

1    illegal aliens in vans, including a 2010 Ford Econoline

2    E-350 van, bearing Ohio plate PHW2661, from a trailer park

3    in Marion, Ohio to work at egg farms located in Croton,

4    Mount Victory, LaRue, and Goshen, Ohio.

5         Defendant's company was paid based on the amount of

6    work his employees performed.  Therefore, the more

7    employees, parentheses illegal aliens, that defendant

8    employed, the greater the defendant's profit.  Defendant

9    transported at least six, but no more than 24 illegal

10   aliens.

11        At the time the defendant drove these illegal aliens

12   to and from work at the egg farm, he knew or was in reckless

13   disregard that they were not legally present in the United

14   States.

15        Defendant's transportation of these illegal aliens

16   furthered their unlawful presence in the United States

17   because it:

18        1.  Induced the aliens to illegally travel to the

19   United States knowing that they would have jobs waiting for

20   them with defendant's company.

21        2.  Knowingly provided the aliens after avenue to pay

22   off their smuggling debt.

23        3.  Assisted the aliens in maintaining employment and,

24   therefore, income.

25        And 4, reduced the chances that the aliens' illegal

1    status would be discovered by law enforcement since they

2    would not be forced to use other forms of transportation to

3    and from work.

4        Defendant transported the illegal aliens for

5    commercial advantage and his own financial gain.

6                THE COURT:  Did you hear all that,

7    Mr. Dominguez?

8                THE DEFENDANT:  Yes.

9                THE COURT:  Is she right?

10               THE DEFENDANT:  Yes.

11               THE COURT:  Mr. Levy, do you wish to make any

12   additions or corrections to the factual basis for the plea?

13               MR. LEVY:  No, Your Honor.

14               THE COURT:  Mr. Dominguez, do you wish to

15   correct anything about that factual basis or add anything to

16   it?

17               THE DEFENDANT:  No.

18               THE COURT:  So having heard the summary of the

19   plea agreement from Ms. Mulhauser and listening to me talk

20   to you about your rights and so forth, can you tell me, do

21   you still want to enter into this plea agreement?

22               THE DEFENDANT:  Yes.

23               THE COURT:  Are you prepared to tell me by

24   your initials at the bottom of every page that you

25   understand every word on that page and that you agree with

1    it?

2                         THE DEFENDANT:  Yes.

3                         THE COURT:  Did anyone make any threats or

4    promises to cause you to enter into this plea agreement?

5                         THE DEFENDANT:  No.

6                         THE COURT:  Have you had enough time to talk

7    about the plea agreement with Mr. Levy or anyone else that

8    you need to talk to about it?

9                         THE DEFENDANT:  Yes.

10                        THE COURT:  Has the plea agreement been

11   executed, Mr. Levy?

12                        MR. LEVY:  It has, Your Honor.  And I should

13   mention for the record that prior to the case being called,

14   I did have an opportunity to review this with the

15   interpreter present.  We went over all of it together while

16   he was in custody at the jail.  We had plenty of time to go

17   over all of it, and I had an opportunity to answer all of

18   his questions.

19        Two minor changes were made between then and now,

20   which I have gone over with him with the interpreter present

21   today, and I do believe that he understands everything and

22   has executed the document.

23        May I approach?

24                        THE COURT:  Sure.

25        Is that all correct, Mr. Dominguez?

 1              THE DEFENDANT:  Yes.

 2              THE COURT:  Well, I have before me a copy of

 3    the plea agreement.  It has Mr. Dominguez' initials at the

 4    bottom of every page, and we already talked about what that

 5    means.

 6         Sir, this is your signature on the last page?

 7              THE DEFENDANT:  Yes.

 8              THE COURT:  I will cause the plea agreement to

 9    be filed of record in the case for Judge Carr's

10    consideration.

11              MS. MULHAUSER:  Your Honor, may I ask a

12    question?

13              THE COURT:  Yes.

14              MS. MULHAUSER:  I apologize.  I'm not a

15    regular in this --

16              THE COURT:  I know.

17              MS. MULHAUSER:  -- district.  I appreciate

18    your patience with me.  I know in some districts, some

19    judges go over immigration consequences.

20              THE COURT:  You know what?  I did neglect

21    that, and actually what normally happens here is that's part

22    of the summary that you do.  Since you're not usually in

23    here, I forgot about that.

24         We do need to talk about, Mr. Dominguez, it's

25    contained in the plea agreement, but I'll talk about it with

1    you specifically as well, you do understand that as a result

2    of being convicted of a felony, to the extent you are not a

3    United States citizen, it could have adverse consequences

4    upon your immigration status, up to and including causing

5    your removal from the United States by way of deportation

6    following any potential prison term; do you understand that?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  Was that enough?

9                    MS. MULHAUSER:  Yes, Your Honor.  I would just

10   add that it might as well bar him from re-entry in the

11   future.

12                   THE COURT:  Yeah.  I think that's probably

13   true and would certainly also be at least an impediment to

14   any pursuit of citizenship, but it certainly has profound

15   potential immigration consequences, sir.

16       And you do understand that?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  Okay.  Mr. Dominguez, how do you

19   plead to the indictment?

20                   THE DEFENDANT:  I'm guilty.

21                   THE COURT:  Did anyone threaten you to get you

22   to say that?

23                   THE DEFENDANT:  No.

24                   THE COURT:  Did anyone promise you anything

25   other than what's contained in this plea agreement?

1                    THE DEFENDANT:  No, nothing.

2                    THE COURT:  Are you telling me you're guilty

3      because you are, in fact, guilty of doing what they said you

4      did?

5                    THE DEFENDANT:  I plead guilty.  It was a

6      small mistake.

7                    THE COURT:  Okay.  Well, I'm asking you, are

8      you guilty of the charge that's set forth in this

9      indictment?  Without qualifying it as a big or a small

10     mistake, this alleges that you violated federal law, you

11     committed a crime.

12          Are you telling me that you are guilty of that?

13                    THE DEFENDANT:  I'm guilty.

14                    THE COURT:  Okay.  Since you've told me that

15     you are, in fact, guilty as charged in the indictment, the

16     plea agreement which you have signed and agreed to contains

17     an adequate factual basis for your plea, you've had the

18     assistance of a lawyer, you know of your right to a trial

19     which is being waived, you know what the maximum possible

20     punishment is, as well as what the advisory guidelines may

21     provide, on the basis of the answers given by you under oath

22     here in court on the record in the presence of your lawyer,

23     as well as having listened to the remarks of counsel for

24     both sides, I hereby make or renew the following findings.

25          I find the defendant competent to make this plea.  He

1    was advised of his constitutional rights.  He made a

2    knowing, intelligent, and voluntary waiver of those rights.

3         Further, he was advised of his limited rights to

4    appeal both the plea and the sentence.

5         I further find the plea was made knowingly,

6    voluntarily, and with an understanding of the charge and the

7    maximum penalties involved, the effect of the plea, and

8    with, again, an adequate factual basis.

9         Therefore, I will enter this day a recommendation for

10   a plea of guilty which will be submitted to the District

11   Judge.  Assuming he concurs with my findings here today, a

12   judgment of guilty shall enter forthwith.

13        To expedite the completion of the case, the matter

14   will be immediately referred to the United States Pretrial

15   Office for -- I'm sorry, Pretrial and Probation Office for

16   preparation of a presentence investigative report.

17        The sentencing in this case will take place on October

18   26 at 10:30 a.m.  So 10/26 at 10:30.

19        Counsel, if that presents a problem, you need to reach

20   out to Judge Carr's chambers, but right now we have it

21   scheduled for that date and time, again, 10/26 at 10:30.

22        The parties are instructed to review the presentence

23   investigative report, frankly, early and often.  If there

24   are mistakes or errors in that report that can be corrected

25   informally by consultation with each other and the probation

1    officer, I encourage you to do that.

2         If there need to be objections filed to that report,

3    those need to be filed well in advance of the sentencing

4    hearing so that Judge Carr has an opportunity to consider

5    those and rule upon them in advance of the hearing.  He does

6    not -- he does not appreciate late filed objections to

7    presentence investigative reports.  I'll even go so far as

8    to say they make him kind of angry, so please don't do that.

9         Additionally, if you wanted to consider any

10   presentence -- I'm sorry, presentence memoranda, get those

11   in in advance, too, because he tends to set a bunch of

12   sentencings on a certain day, so his ability to review a

13   whole bunch of stuff the night before is kind of restricted,

14   so get anything in that you wish him to consider at the time

15   of sentencing well in advance of the sentencing hearing.

16        Mr. Levy, Judge Carr wants you to meet with your

17   client not less than one week prior to the sentencing

18   hearing to prepare him for that.  He really also does not

19   react well when it appears that the defendant isn't ready to

20   go at the time of the sentencing hearing.  So spend some

21   time with your client ahead of time so that he's prepared

22   for the sentencing hearing, so he's not surprised by

23   anything that's taking place there.

24        Mr. Dominguez, I need to tell you to cooperate fully

25   and completely with the probation officer who prepares your

1    presentence investigative report.  If you fail to do so,

2    that will be called to Judge Carr's attention and would

3    presumably be taken into consideration by him when he makes

4    the decision about what the appropriate sentence for your

5    case should be.  I would think that that would be

6    particularly important to have when he's considering whether

7    to grant acceptance -- credit for acceptance of

8    responsibility, as we talked about here earlier today, which

9    would otherwise be recommended in the plea agreement.  Okay?

10       As you know, the plea agreement isn't binding on him.

11   There's a joint recommendation in there.  You want him to

12   follow that, so you need to cooperate with the probation

13   officer who prepares the presentence investigative report.

14       It's my understanding that Mr. Dominguez' detention

15   status is not up for reconsideration here today, that that's

16   continuing the status quo.

17       Ms. Mulhauser, I appreciate you reminding me to cover

18   the immigration consequences earlier.

19       Is there anything else you can think of that we should

20   cover before we conclude here today?

21            MS. MULHAUSER:  Nothing else, Your Honor.

22            THE COURT:  Okay.  Mr. Levy, can you think of

23   anything else we should do by way of making sure that your

24   client has -- has had everything he needs to have by way of

25   procedure here today looking out for him?

1          MR. LEVY:  No, Your Honor.

2              THE COURT:  Okay.

3              MR. LEVY:  Thank you.

4              THE COURT:  Mr. Dominguez, did you understand

5     everything that happened here today?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you have any questions, sir?

8              THE DEFENDANT:  No.

9              THE COURT:  Okay.  We will be adjourned.  I

10    wish you well.

11          (Hearing concluded.)

12

13               C E R T I F I C A T E

14

15          I certify that the foregoing is a correct

16    transcript of the record of proceedings taken from a digital

17    audio recording of the above-entitled matter, to the best of

18    my ability.

19

20

21          S/Bruce A. Matthews        July 6, 2015
          Bruce A. Matthews, RDR-CRR        Date
22

23

24

25